J-A30037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ADAM GREENBLOTT | |
| Appellant | No. 251 EDA 2016 |

Appeal from the Judgment of Sentence Entered October 1, 2015
In the Court of Common Pleas of Monroe County
Criminal Division at No: CP-45-CR-0002880-2013

BEFORE:  BOWES, OLSON, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MAY 17, 2017**

Appellant Adam Greenblott appeals from the October 1, 2015 judgment of sentence entered in the Court of Common Pleas of Monroe County ("trial court"), following his jury convictions for aggravated assault, endangering the welfare of children ("EWOC"), simple assault, and recklessly endangering another person ("REAP").[1]  Upon review, we affirm.

The facts underlying this case are undisputed.  As recounted by the trial court:

> On November 30, 2013, an ambulance responded to [Appellant's] Monroe County residence after a 911 call that a child, three year-old C.K., was showering unattended and fell in the shower.  The four EMS responders were Mehmet Barzev, John Brooks, Joseph Fiorentino and Christine Fiorentino.  Upon arrival, EMS found C.K. wearing sweatpants and both C.K. and

---

[1]  18 Pa.C.S.A. §§ 2702(a)(1), 4304(a)(1), 2701(a)(1), and 2705, respectively.

the couch were dry. His eyes were rolling back of his head and he was in and out of consciousness. EMS observed new and existing visible trauma to the head, multiple abrasions to the head and face, contusions to his forehead, left and right temple, and to the left and right ear.

Eventually, C.K. become more lucid and alert. He complained of pain in his neck and abdomen. EMS immobilized C.K. by placing a cervical collar around C.K.'s neck, strapped him on a pediatric spine board, and called for a Medevac.

While waiting for the Medevac, C.K. made consistent statements to all four EMS that he did not want [Appellant] at the hospital because [Appellant] hurts him. Specifically, C.K. told EMS that [Appellant] grabs him by the neck and spanks him. C.K. also stated [Appellant] punched him in the head and had punched him in the head on prior occasions.

The Medevac transported C.K. to Lehigh Valley Hospital in Allentown, Pennsylvania. Jennifer Love, a registered nurse, treated C.K. upon arrival. Love found that C.K. was alert, oriented, and acting age appropriately. When Love assessed C.K. for injuries, she found old and new injuries, including bruising on the top of his left ear, swelling on forehead, bruising in his groin, bruising in lower back, burn on left hand, and petechiae in his eyelids. C.K. told and demonstrated how [Appellant] put his hand on the back of C.K.'s head and slammed it forward causing C.K.'s head to hit the bathtub. A CT Scan revealed C.K. suffered an acute subdural hemorrhage and midline shift in the brain. . . .

This was not the first incident in which [Appellant] injured C.K. or where C.K. was injured while in [Appellant's] care. Some of the old injuries, including those for which the hospital had records, were inflicted by [Appellant] when he was watching C.K.

[Appellant] was interviewed by the police at the hospital and then again at police headquarters. He gave inconsistent explanations in explaining C.K.'s old and new injuries including an explanation that defied logic. For instance, [Appellant] claimed that C.K. injured his ear when [Appellant], who weighed 280 pounds at the time of his arrest, was pushed over by a gust of wind and the door he was holding slammed shut on C.K.

Trial Court Opinion, 4/11/16, at 1-3 (internal record citation omitted) (sic).

On December 1, 2013, based on the Commonwealth's allegation that Appellant slammed C.K.'s head into a hard surface, resulting in serious bodily injury to C.K., Appellant was charged with aggravated assault, EWOC,

simple assault and REAP. The case proceeded to a jury trial, at which photographs of C.K.'s old and new injuries, C.K.'s past and present medical records, and C.K.'s diagnostic films and reports were admitted into evidence. *Id.* at 2.

Both parties presented, *inter alia*, expert testimony. First, Dr. Debra Esernio-Jenssen, board-certified by the American Board of Pediatrics in both general pediatrics and in child abuse pediatrics, testified for the Commonwealth. *See* N.T. Trial, 7/9/15, at 14, 21. Dr. Esernio-Jenssen testified that she was employed by the Lehigh Valley Health Network, where she served, among other things, as the Medical Director of Child Protection Team and the Medical Director of the Child Advocacy Center. *Id.* at 15. Dr. Esernio-Jenssen opined, based on her review of C.K.'s medical records, specifically the CT scan, that C.K. suffered a traumatic brain injury, *i.e.*, he "had an acute subdural hemorrhage, most on the entire right side of his cerebral hemisphere and it went in between a little bit of both cerebral hemispheres. There was also what is referred to as a midline shift[2] from

---

[2] Dr. Esernio-Jenssen described a midline shift as follows:

> So as you saw in the picture, the brain is set up perfectly symmetrical. When there's brain tissue damage and swelling on a microscopic level the brain could swell as well as sometimes when there's a lot of blood; the brain pushes on the other side of the brain so instead of being perfectly symmetrical one side pushes towards the other side.

N.T. Trial, 7/9/15, at 65.

the right to the left." *Id.* at 44, 49-50. Dr. Esernio-Jenssen explained that a subdural hematoma is significant in that

> we shouldn't have blood on top of our brain. It signifies that there was tearing of blood vessels called bridging veins. Those are the veins that go from inside the skull through the different layers [of the brain] and attached to the brain. In addition to that the blood in between the hemispheres as well and also the midline shift which meant there was pressure put on the right side of the brain pushing on to the left side to the brain—and that's very [life-]threatening because if that is not treated it can cause what is referred to as herniation. That means where the brain goes down into the spinal column and that would cause immediate death.
>
> . . . .
>
> If it wasn't treated or monitored it would cause herniation because it would just get bigger and the brain swelling. So it's not only the bleeding, it's the damage to the brain and the brain swelling as well.

*Id.* at 51-52. Dr. Esernio-Jenssen further opined that C.K. suffered the acute subdural hematoma as a result of being "punched in the head by an adult male." *Id.* at 65. She likened C.K.'s injuries to injuries suffered as a result of a heavyweight boxing match. *Id.* Moreover, Dr. Esernio-Jenssen testified that C.K. weighed 32.4 pounds and measured 37 inches in height at the time of the incident. *Id.* at 68-69. Based on these measurements and the extent of C.K's injuries, Dr. Esernio-Jenssen opined that C.K.'s falling in or out of a bathtub did not cause his injuries. *Id.* at 69. Specifically, Dr. Esernio-Jenssen explained that C.K.

> is small, low mass, low height, falling his own body distance which he had done two other prior times. Remember when he was 34 months old he was jumping off a bed and hit something and had a little cut. Another time he was running and fell on concrete and had a little cut, no neurologic symptoms, and here where it's saying that he just fell unwitnessed and caused these very significant injuries—acute subdural hemorrhage, a midline

- 4 -

shift, unconsciousness, thready pulse,[3] you know shallow respiration; he had evidence of having poor perfusion. He had an elevated anion gap, his body was stressed, he had an elevated white count; that is not consistent with a short fall.

*Id.* at 69-70. Additionally, Dr. Esernio-Jenssen testified that C.K. had "contusions, ecchymosis and bruises on his forehead, his cheek, his back, his pubic area. He had petechiae on his upper eyelids, a bruise on his left jaw and some abrasion on his hands." *Id.* at 49.

In response, Appellant offered the testimony of Dr. William Louis Manion, a pathologist at Virtual Health. *Id.* at 115. Dr. Manion testified that he also worked as a medical examiner for the counties of Burlington and Ocean in New Jersey. *Id.* Based on his review of C.K.'s medical records, photographs, and the police reports, among other things, Dr. Manion opined that C.K.'s injuries were caused by an accidental fall in the bathtub. *Id.* at 150, 160. He further opined that an absence of retinal hemorrhages bolstered his conclusion that C.K. suffered injuries because of an accident. *Id.* at 163.

To rebut Appellant's claim that C.K.'s injuries were accidental, the Commonwealth, over Appellant's objection, called to the stand Appellant's former fiancée, Rebecca Showers, to offer prior bad acts evidence under Rule 404(b). N.T. Trial, 7/10/15, at 88-90. Ms. Showers testified that she was engaged to Appellant and was in a relationship with him from fall 2012

---

[3] Dr. Esernio-Jenssen described a thready pulse as "your heart—that you're not pounding out your blood to your extremities." *Id*. at 43.

until fall 2013. *Id.* at 99. She testified that, during an argument in a hallway inside Appellant's home, he "backed [her] towards the end of the hallway," held her "by the head" and "pushed [her] head and bounced it up against the wall." *Id.* at 100. Her head hit the wall "very hard." *Id.* Ms. Showers testified that during this argument Appellant was "very angry." *Id.*

Following a three-day trial, the jury found Appellant guilty of the above-referenced crimes. On October 1, 2015, at sentencing, Appellant argued that the trial court would abuse its discretion if it imposed an aggravated-range sentence because it was precluding from considering Appellant's "position of trust" vis-à-vis C.K. as an aggravating factor. In support, Appellant argued that this factor already was subsumed in, and contemplated by, the EWOC conviction. The trial court disagreed, imposing upon Appellant an aggravated-range sentence of 66 to 132 months in prison for aggravated assault followed by a consecutive aggravated-range sentence of 12 to 24 months' imprisonment for EWOC. The trial court did not impose a sentence for simple assault and REAP, because it claimed they merged with aggravated assault.[4] Thus, Appellant received an aggregate sentence

---

[4] Although not an issue on appeal, we note that REAP does not merge with aggravated assault. *See Commonwealth v. Cianci*, 130 A.3d 780, 783 (Pa. Super. 2015) (concluding that aggravated assault and REAP do not merge for purposes of sentencing because "each offense requires proof of an element that is absent from the other offense, and one offense can be committed without committing the other offense").

of 78 to 156 months' imprisonment. Appellant timely filed post-trial motions, which the trial court denied. Thereafter, Appellant appealed to this Court. Following Appellant's filing of a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, the trial court issued a Pa.R.A.P. 1925(a) opinion.

On appeal, Appellant raises three issues for our review:

I.    Did the trial court err when it sustained Appellant's conviction for aggravated assault, causing serious bodily injury, where the Commonwealth did not establish that C.K. (a three-year-old child) suffered "serious bodily injury"?

II.   Did the trial court err when it admitted irrelevant prejudicial evidence of a prior purported incident of domestic violence between Appellant and a former paramour, when the only value of the evidence was to demonstrate that Appellant had a violent character and acted in accord with that character on the evening C.K. was injured?

III.  Did the trial court err by using an element of the offense of [EWOC] when it imposed sentence as grounds to: (1) aggravate Appellant's sentence for aggravated assault; (2) impose a consecutive sentencing for [EWOC]; and (3) aggravate Appellant's sentence for [EWOC]?

Appellant's Brief at 7 (unnecessary capitalization omitted).

We begin our analysis with Appellant's second argument concerning the admissibility of Ms. Shower's testimony under Rule 404(b).

The admission of evidence is a matter for the sound discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court clearly abused its discretion. ***Commonwealth v. Sherwood***, 982 A.2d 483 (Pa. 2009) (citation omitted). "An abuse of discretion is not merely an error of judgment; rather discretion is abused when the law is overridden or misapplied, or the judgment exercised is

manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record." ***Commonwealth v. Antidormi***, 84 A.3d 736, 745 (Pa. Super. 2014) (citation omitted), ***appeal denied***, 95 A.3d 275 (Pa. 2014); ***accord Commonwealth v. Trinidad***, 96 A.3d 1031, 1036 (Pa. Super. 2014).

Instantly, Appellant argues that the trial court abused its discretion in allowing Ms. Showers to testify under Rule 404(b) about Appellant hitting her head against the wall because such testimony was not relevant and "more prejudicial than probative of Appellant's responsibility for C.K.'s injuries." Appellant's Brief at 26. We disagree.

Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding a material fact. ***Commonwealth v. Spiewak***, 617 A.2d 696, 699 (Pa. 1992). Once evidence is found to be relevant and probative, it is inadmissible only if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. ***Commonwealth v. Lilliock***, 740 A.2d 237, 244 (Pa. Super. 1999) (citing ***Commonwealth v. Foy***, 612 A.2d 1349 (Pa. 1992), ***appeal denied***, 795 A.2d 972 (Pa. 2000)).

Rule 404(b), relating to character evidence, crimes and other acts, provides in relevant part:

> *(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

- 8 -

> *(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, **absence of mistake, or lack of accident**.  In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1), (2) (emphasis added).  As our Supreme Court explained

in **Sherwood**:

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity.  Pa.R.E. 404(b)(1).  However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident.  Pa.R.E. 404(b)(2).  In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

**Sherwood**, 982 A.2d at 497 (citations omitted).

This Court sitting *en banc* warned in **Commonwealth v. Ross**, 57 A.3d 85 (Pa. Super. 2012) (*en banc*), **appeal denied**, 72 A.3d 603 (Pa. 2013):

> The purpose of Rule 404(b)(1) is to prohibit the admission of evidence of prior bad acts to prove "the character of a person in order to show action in conformity therewith."  Pa.R.E. 404(b)(1).  While Rule 404(b)(1) gives way to recognized exceptions, the exceptions cannot be stretched in ways that effectively eradicate the rule.  With a modicum of effort, in most cases it is possible to note some similarities between the accused's prior bad conduct and that alleged in a current case.  To preserve the purpose of Rule 404(b)(1), more must be required to establish an exception to the rule—**namely a close factual nexus sufficient to demonstrate the connective relevance of the prior bad acts to the crime in question**. . . . this Court has warned that prior bad acts may not be admitted for the purpose of inviting the jury to conclude that the defendant is a person "of unsavory character" and thus inclined to have committed the crimes with which he/she is charged.

**Ross**, 57 A.3d at 105-06 (emphasis added).

- 9 -

Mindful of the warning, and upon careful review, we discern no abuse of discretion on the part of the trial court in allowing Ms. Showers to testify on behalf of the Commonwealth about Appellant's "slamming her head into a wall" while she was engaged to him to rebut Appellant's claim that C.K.'s injuries were the result of an accident. *See* Trial Court Opinion, 4/11/16, at 12. As the trial court found, and we agree, there exists in this case a close factual nexus sufficient to establish the connective relevance of Appellant's prior bad acts to the crimes in question. The trial court reasoned:

> [Appellant] claimed C.K.'s injuries were the result of an accident—C.K. falling, presumably in the bathtub. Given the remarkable similarity between C.K.'s description and Ms. Showers' description of how [Appellant] grabbed them when he was angry, evidence concerning the circumstances of C.K.'s injuries supported a reasonable inference that C.K.'s injuries were not accidental or the product of a mistake, but, rather, a result of [Appellant's] deliberate act—one that he had performed before. Thus, we found the evidence was relevant. Based on the claim of accident, the testimony of [Appellant's] expert, and the fact that the assault occurred when no one else was around, we found that the evidence was offered, admitted, and used for legitimate purposes, and that its probative value outweighed any prejudicial effect.

*Id.* at 13-14. Moreover, our review of the record reveals that the trial court gave the jury a cautionary instruction on Appellant's prior bad acts evidence. *See* N.T. Trial 7/10/15, at 188. As a result, we conclude the instruction "ameliorated any undue prejudice caused by the introduction of the prior bad acts." *Sherwood*, 982 A.2d at 497-98 (citing *Commonwealth v. Claypool*, 495 A.2d 176, 179-80 (Pa. 1985) (finding that giving of cautionary instructions was sufficient to overcome prejudicial effect of introduction of prior bad acts evidence)).

We next address Appellant's argument that his conviction for aggravated assault was unsupported by sufficient evidence.

"A claim challenging the sufficiency of the evidence is a question of law." ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000).

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Antidormi***, 84 A.3d at 756.

In support of his sufficiency argument, Appellant points out only that the Commonwealth failed to prove that C.K. suffered a "serious bodily injury."[5]  Appellant's Brief at 19. Specifically, Appellant asserts that C.K.'s injury never matured into a life-threatening injury even though it had the potential to do so. ***Id.*** at 22-24.

---

[5] Appellant does not challenge the element of *mens rea* on appeal.

To obtain a conviction for aggravated assault, the Commonwealth must prove beyond a reasonable doubt that the defendant "attempt[ed] to cause serious bodily injury to another, or caus[ed] such injury intentionally, knowingly, recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S.A. § 2702(a)(1). "Where the victim suffers serious bodily injury, the Commonwealth is not required to prove specific intent." *Commonwealth v. Patrick*, 933 A.2d 1043, 1046 (Pa. Super. 2007) (citation omitted), *appeal denied*, 940 A.2d 364 (Pa. 2007). Serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

Here, the evidence presented at trial, viewed in a light most favorable to the Commonwealth, establishes the Commonwealth proved the element of serious bodily injury. As the trial court found:

> After [Appellant] assaulted [C.K.], EMS personnel found C.K. on a sofa, pale, cold and not responsive. His eyes were rolling in back of his head and he was in and out of consciousness. They observed old and new trauma to C.K.'s head, multiple abrasions on his head and face, and contusions on his forehead, left and right temple, and left and right ear.
>
> The same injuries were observed by medical personnel at Lehigh Valley Medical Center. In addition, petechiae were noted in C.K.'s eyelids. A CT scan and medical examination demonstrated that C.K. had suffered a subdural hematoma and a midline shift in his brain.
>
> C.K.'s injuries, old and new, were demonstrated through testimony, photographs, and medical records that were entered into evidence.

Dr. Esernio-Jenssen unequivocally testified that C.K. had suffered physical abuse and abusive head trauma, that the subdural hematoma and midline shift in the brain were not accidental and did not result and could not have resulted from a fall, and that the injuries were serious life threatening injuries. She explained, through testimony and demonstrative evidence, that C.K.'s injuries were consistent with injuries of a type suffered by a boxer when punched in the head with force. In addition, Dr. Esernio-Jenssen stated that petechiae on the eyelids is caused by either a high velocity blow to the eyelid or attempted strangulation.

Trial Court Opinion, 4/11/16, at 8-9. Accordingly, no relief is due on Appellant's sufficiency claim.[6]

To the extent Appellant argues that C.K.'s injury does not constitute a serious bodily injury because it never evolved into a life-threatening injury, such argument is waived. Appellant fails to cite any legal authority for the proposition that serious bodily injury always must involve a life-threatening injury. The failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119." *Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007) (citation, quotation marks and brackets omitted). While this Court may overlook minor defects or omissions in an appellant's brief, we will not act as his or her appellate counsel. *Bombar v. W. Am. Ins. Co.*, 932 A.2d 78, 93 (Pa. Super. 2007).

---

[6] To the extent Appellant attempts to highlight the inconsistency in C.K.'s testimony and invites us to reweigh the evidence in his favor, we decline to do so. It is not for this Court to reweigh the evidence and substitute its judgment for that of the fact-finder. *Commonwealth v. Hanible*, 30 A.3d 426, 443 (Pa. 2011); *see Commonwealth. v. Lehman*, 13, 820 A.2d 766, 772 (Pa. Super. 2003), *aff'd*, 870 A.2d 818 (Pa. 2005) ("the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.").

Appellant has made no effort whatsoever to develop this argument with citation to legal authority. Thus, his failure to develop a coherent legal argument results in waiver of this issue.

Even if this issue was not waived, Appellant still would not succeed. The evidence of record clearly demonstrates that C.K. indeed did suffer a serious bodily injury, irrespective of whether it was life-threatening. As Dr. Esernio-Jenssen credibly testified, C.K.'s traumatic head injury could have caused herniation leading to instant death had he not received prompt treatment for the injury.[7] N.T. Trial, 7/9/15, at 51-52. Under Appellant's tortured logic, aggravated assault convictions would be reserved only for near-death situations. For example, if a person shoots another in the chest and that person for some reason survives with timely medical intervention, an aggravated assault charge could not be brought. We reject this narrow interpretation of serious bodily injury.

Lastly, Appellant argues that his sentence is illegal.[8] In support of this claim, Appellant points out that the trial court improperly used an element of

---

[7] Our courts have frequently noted that the head represents a vital part of the human body. **See Commonwealth v. Robertson**, 874 A.2d 1200, 1207 (Pa. Super. 2007) (noting that laymen can conclude that without expert testimony that the head, neck, and stomach are vital areas of the human body); **accord Commonwealth v. Alexander**, 383 A.2d 887, 889 (Pa. 1978).

[8] Appellant has abandoned and withdrawn all other claims challenging the discretionary aspects of his sentence. **See** Appellant's Brief at 16 n.2 ("Appellant withdraws the claims that . . . raise a discretionary aspect of sentence.").

EWOC to impose an aggravated-range sentence for aggravated assault and EWOC. Appellant's Brief at 33.

Preliminarily, we note that a trial court's imposing of an aggravated-range sentence based upon a factor that constitutes an element of the offense does not implicate the legality of the sentence, but rather the discretionary aspects of sentencing. *See Commonwealth v. Fullin*, 892 A.2d 843, 847-48 n.2 (Pa. Super. 2006). Because Appellant's issue implicates only the discretionary aspects of his sentence, we note it is well-settled that "[t]he right to appeal a discretionary aspect of sentence is not absolute." *Commonwealth v. Dunphy*, 20 A.3d 1215, 1220 (Pa. Super. 2011). Rather, where an appellant challenges the discretionary aspects of a sentence, an appellant's appeal should be considered as a petition for allowance of appeal. *Commonwealth v. W.H.M.*, 932 A.2d 155, 162 (Pa. Super. 2007). As we stated in *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
>> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id.* at 170 (citing *Commonwealth v. Evans*, 901 A.2d 528 (Pa. Super. 2006)).  Whether a particular issue constitutes a substantial question about the appropriateness of sentence is a question to be evaluated on a case-by-case basis.  *See Commonwealth v. Kenner*, 784 A.2d 808, 811 (Pa. Super. 2001), *appeal denied*, 796 A.2d 979 (Pa. 2002).

Here, Appellant has satisfied the first two requirements of the four-part *Moury* test.  Appellant filed a timely appeal to this Court, and preserved the issue on appeal through his post-sentence motions. Appellant, however, has failed to file a Pa.R.A.P. 2119(f) statement.[9]  We decline to find waiver on this basis because the Commonwealth did not object to the omission of the Rule 2119(f) statement.  *See Commonwealth. v. Foster*, 960 A.2d 160, 163 (Pa. Super. 2008) (noting even if properly preserved, a challenge to the discretionary aspect of a sentence is waived if an appellant does not include a Pa.R.A.P. 2119(f) statement in his brief and the opposing party objects to the statement's absence), *aff'd*, 17 A.3d 332 (Pa. 2011); *see Commonwealth v. Gould*, 912 A.2d 869, 872  (Pa. Super. 2006) (noting that "in the absence of any objection from the Commonwealth, we are empowered to review claims that

_____

[9] Rule 2119(f) provides that "[a]n appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence."  Pa.R.A.P. 2119(f).

otherwise fail to comply with Rule 2119(f).").  We, therefore, must determine only if Appellant's sentencing issues raise a substantial question.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis.  *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa. Super. 2007).  We have found that a substantial question exists "when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process."  *Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa. Super. 2008) (citation omitted), *appeal denied*, 964 A.2d 895 (Pa. 2009).  Here, based on our review of Appellant's claim, as stated earlier, he has raised a substantial question.  We consistently have held that a substantial question exists where a sentencing court "improperly based [an] aggravated range sentence on a factor that constituted an element of the offense."  *Fullin*, 892 A.2d at 848.

When reviewing a challenge to the trial court's discretion, our standard of review is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

*Commonwealth v. Bowen*, 55 A.3d 1254, 1263 (Pa. Super. 2012) (quoting *Commonwealth v. Cunningham*, 805 A.2d 566, 575 (Pa. Super. 2002)), *appeal denied*, 64 A.3d 630 (Pa. 2013).

Appellant argues that the trial court used the factor of "position of trust," which is subsumed in EWOC to aggravate his sentence for aggravated assault and EWOC.[10] In so doing, Appellant argues that the factor of "'position of trust' is the functional, practical and legal equivalent of owing the 'duty of care, protection, or support,'" which is an element of EWOC. Appellant's Brief at 36-37. Specifically, EWOC provides "[a] parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S.A. § 4304(a)(1).

Here, the trial court apprised Appellant of the rationale for his sentence on the record. *See* Sentencing Hearing, 10/1/15, at 35-48. The trial court explained that, although a duty of care owed to the child is an element of EWOC, it did not aggravate Appellant's EWOC sentence for a violation of that duty. Trial Court Opinion, 4/11/16, at 23. Instead, the trial court found that Appellant had violated his position of trust as to both C.K. and his mother. For example, during sentencing the trial court stated, "but

---

[10] For purposes of the instant appeal, we assume, without deciding, that the factor of position of trust is an element of EWOC.

the fact that you were in a position of trust where the child trusted you, **the mother trusted you, other people trusted you** with this young man's life and then you took advantage of that is again to me a black and white definition of an aggravating circumstance." Sentencing Hearing, 10/1/15, at 46 (emphasis added). As such, the trial court concluded that its imposition of an aggravated-range sentence for EWOC was not in error.

Moreover, the trial court did not rely solely on Appellant's "position of trust" in imposing his aggravated-range sentence for EWOC. It recounted a litany of reasons for sentencing Appellant in the aggravated-range, including, "C.K's age, the injuries C.K. suffered at the hands of [Appellant] both before and during the instant assault, [Appellant's] prior treatment of his girlfriends, his anger issues, his lack of empathy or remorse, his courtroom struggle with deputy sheriffs after the verdict was returned, the direct and collateral consequences of [Appellant's] criminal actions, and the nature, grading, and severity of the crimes." Trial Court Opinion, 4/11/16, at 23; Sentencing Hearing, 10/1/15, at 35-48. Even if the trial court erred by improperly considering Appellant's "position of trust," he is not thereby entitled to have his sentence vacated. *See Commonwealth v. Bowen*, 975 A.2d 1120, 1127 (Pa. Super. 2009) (noting that, despite relying on an impermissible factor, the trial court evaluated several permissible factors in imposing an aggravated-range sentence); *Commonwealth v. P.L.S.*, 894 A.2d 120, 133 (Pa. Super. 2006) (finding that even if the trial court considered an inappropriate factor at sentencing, "the court offered

significant other support for sentencing in excess of the guidelines in this case."), ***appeal denied***, 906 A.2d 542 (Pa. 2006).

To the extent Appellant argues that the trial court abused its discretion by considering the factor of "position of trust" to aggravate his sentence for aggravated assault, we disagree. Aggravated assault does not contain the element of "position of trust." ***See*** 18 Pa.C.S.A. § 2702(a)(1). Thus, the trial court properly considered the element of "position of trust" to sentence Appellant in the aggravated-range for aggravated assault.

In sum, we conclude that the trial court did not err in concluding that sufficient evidence of record supported Appellant's conviction for aggravated assault. The trial court also did not abuse its discretion in allowing the Commonwealth to present evidence under Rule 404(b) and aggravating Appellant's sentence for aggravated assault and EWOC.

Judgment of sentence affirmed.
Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/17/2017

- 20 -